OPINION

This consolidated action is before this Court on five separate petitions for a writ of prohibition against the Navajo Nation Labor Commission (“Commission”) on the grounds that the Commission lacks subject matter jurisdiction over the petitioners on the basis of sovereign immunity. We deny the writ of prohibition and remand the cases.
I
Petitioner Navajo Housing Authority (NHA) at one time employed each of the five claimants in this consolidated writ action, whose separate Cases remain pending before the Commission. All the claimants except one claim they were unjustly discharged by NHA. The fifth claimant resigned voluntarily but disputes NHA’s calculation of her annual leave payout, claiming a substantial underpayment. All pursued NHA’s internal grievance process, four losing before the NHA Griev-anee Committee and one told by NHA mid-process and without explanation that the internal grievance process was being suspended and that she should file an Office of Navajo Labor Relations charge, which is the first step toward the filing of a complaint before the Commission. All subsequently proceeded to file Navajo Preference in Employment Act (NPEA) complaints before the Commission, seeking monetary and non-monetary relief as authorized at 15 N.N.C. § 612(A) for violations of the NPEA.
Specifically, 15 N.N.C. § 612(A)(1) provides that, upon a finding of an NPEA violation, the Commission is to issue a remedial order that shall include, “without limitation, directed hiring, reinstatement, displacement of non-Navajo employees, back-pay, front-pay, injunctive relief, mandated corrective action to cure the violation within a reasonable period of time, and/or, upon a finding of intentional violation, imposition of civil fines; provided that liability for back-pay or other forms of compensatory damages shall not accrue from a date more than two years prior to the date of filing of the Charge which is the basis for the complaint.” Section 612(A)(2) permits the award of costs and attorney’s fees in certain circumstances.
NHA filed separate petitions for a writ of prohibition requesting that this Court prohibit the Commission from hearing any of the five cases on the basis of lack of subject matter jurisdiction due to sovereign immunity as set forth at 6 N.N.C. § 623 of NHA’s Plan of Operations. NHA argues that this Court’s decision in NHA v. Johns, 11 Am. Tribal Law 31 (Nav.Sup. Ct.2G12) provided that sovereign immunity *417 springs from within the NHA’s Plan of Operations itself and not the Navajo Sovereign Immunity Act (NSIA) and further provided that NHA’s immunity from money judgments must be separately and specifically waived in order for monetary claims under the NPEA to be pursued against NHA. NHA argues that since NHA has not specifically waived its immunity under 6 N.N.C. § 623 as to NPEA claims, nor has it entered into employment contracts specifically acknowledging the application of the NPEA it is immune from money judgments in such claims; therefore, the Commission lacks jurisdiction to hear such claims.
We granted an alternative writ to stay the Commission’s proceedings and posed five specific questions to the parties, namely, (i) why the Commission also loses jurisdiction over the non-monetary portions of the Real Parties in Interest (RPI)’s NPEA claims; (ii) why 15 N.N.C. § 609 of the NPEA requiring that all transactional documents on the Navajo Nation entered into by an employer contain an agreement to strictly abide by all requirements of the NPEA or otherwise have the terms and provisions of the NPEA “incorporated therein as a matter of law” does not apply; (iii) whether NHA’s immunity can be broader than its parent, the Navajo Nation government; (iv) in what way insurance proceeds are, or are not, “property” within the meaning of 6 N.N.C. § 623; and (v) why front-pay or back-pay is not vested in an employee under an existing budget rather than considered a money judgment. Oral argument was held on September 5, 2014 at the Navajo Department of Transportation in Tse Bonito. We now issue our decision.
II
NHA’s case, in its briefs and at oral argument, may be summarized as follows. NHA believes its immunity at 6 N.N.C. § 623 is “unique” due to its receipt of federal housing dollars, and that this Court’s opinion in NHA v. Johns requires there must be an express waiver of 6 N.N.C. § 623 by contract rather than apply the exceptions to immunity under 1 N.N.C, § 554 of the NSIA. Also relying on NHA v. Johns, NHA argues that that the NPEA does not supersede any provision in NHA’s Plan of Operations because this Court overruled, in its entirety, Tso v. NHA 8 Nav. R. 548, 5 Am. Tribal Law 438 (Nav.Sup.Ct.2004) including the Tso Court’s view that 6 N.N.C. § 623 was merely a “statutory exemption” overridden by the NPEA under the presumed intent of the Council. NHA goes on to assert that NHA is immune from NPEA monetary claims as 6 N.N.C. § 623 has not been specifically waived by contract as to NPEA claims.
Firstly, the immunity at 6 N.N.C. § 623 is not a general immunity from suit, but a “conditional limitation” on NHA’s qualified consent to sue and be sued as set forth at 6 N.N.C. § 616(B)(1). NHA v. Johns, 11 Am. Tribal Law at 38 (citing NHA v. Dana, 5 Nav. R. 157 (Nav.Ct.App.1987)), It exempts all NHA property and funds from judicial process but, however, provides for several specific exceptions: (1) when there is “specific reference in any statute citing this provision and stating clearly that the exception is waived”; (2) when NHA has obliged itself through pledges and liens; (3) when the federal government wishes to pursue remedies under the subchapter; and (4) when NHA pursues eviction actions.[2] 6 N.N.C. § 623. *418 At oral argument, NHA agreed that it could expend funds voluntarily to remedy employment-related issues through its internal grievance process and, otherwise, could obligate itself using any method so long as it is not compelled to do so under a money judgment. It is well within NHA’s powers pursuant to 6 N.N.C. § 616(B)(3) to enter “freely” into contracts with “any person.” There is no indication that contracts entered into by NHA require immunity waivers by specific reference to 6 N.N.C. § 623, nor does the provision so require.
Secondly, on October 19,2004, the Navajo Nation Council amended the NSIA to expressly “affirm” that NHA is within the definition of “Navajo Nation.” NHA v. Johns, 11 Am. Tribal Law at 33 (citing Resolution CO-55-04 (codified at 1 N.N.C. § 552(P))). NHA’s argument that its sovereign immunity at 6 N.N.C. § 623 is unique from that conferred under the NSIA and greater than that of the Navajo Nation is misplaced. Section 623 is a complex and multi-faceted provision that has been frequently misread and misapplied due to its multiple components and exceptions. As we stated in NHA v. Johns, “it has never been questioned that NHA’s immunity springs from inherent governmental immunities as a public body created to serve ‘an essential public and governmental purpose’ in the area of reservation housing.” NHA v. Johns, 11 Am. Tribal Law at 36 (citing 6 N.N.C. §§ 616-617). The Council’s Title 1 amendments in 2004 clarified and codified NHA’s inherent gov-emmental immunity as part of the Navajo Nation government and, furthermore, made NHA’s scheme of qualified immunities “subject to the [NSIA].” 6 N.N.C. § 616(B)(1). This includes the NSIA’s scheme of exceptions to immunity, which expressly provides that the Navajo Nation may be sued in the Navajo Nation courts “with respect to any claim which is within the express coverage and not excluded by either commercial liability insurance carried by the Navajo Nation or an established Navajo Nation self-insured and/or other claims program of the Navajo Nation government.” 1 N.N.C. § 554(F). NHA’s Plan of Operations at 6 N.N.C. § 616(B)(10) permits NHA to purchase insurance against “any risk.” This power for NHA to purchase insurance against “any risk” is unqualified and does not exclude purchase of insurance against NPEA-related risks. NHA’s immunity is no less and no greater than that of the Navajo Nation.
Thirdly, in the NPEA, the Council defines the term “employer” to include “all persons, firms, associations, corporations, and the Navajo Nation and all of its agencies and instrumentalities who engage the services of a person for compensation, whether an employee, agent, or servant.” 15 N.N.C. § 603(B). Both before and following its specific inclusion as Navajo Nation in 2004, NHA is an “employer” within the meaning of the NPEA, which includes all persons, firms, associations, corporations, and the Navajo Nation and all of its *419 agencies and instrumentalities. As an employer, 15 N.N.C. § 609 addresses, as a matter of law, what must be contained in NHA’s employment-related transactional documents with its employees, namely, “a provision pursuant to which the employer and any other contracting party affirmatively agree to strictly abide by all requirements of [the NPEA]. With respect to any transaction document which does not contain the foregoing provision, the terms and provisions of [the NPEA] are incorporated therein as a matter of law and the requirements of [the NPEA] shall constitute affirmative contractual obligations of the contracting parties.” 15 N.N.C. § 609(A) (Emphasis added). The wording and effect of this provision on NHA’s employment relationship with its employees, coupled with NHA’s power to freely enter contracts, is plain and unambiguous. As a matter of law, NHA may not evade its responsibilities as an employer under the NPEA by failing to include reference to its NPEA responsibilities in its employment-related transactional documents. These include its personnel policies manual and any contracts for employment services. As a matter of law, all requirements of the NPEA, including NPEA remedies and sanctions, are incorporated into all such documents.
Navajo Nation laws must be read comprehensively and in combination, not piñón picked for provisions that support a given position. NHA v. Johns, 11 Am. Tribal Law at 38-39; In the Matter of Frank Seanez, 9 Am. Tribal Law 377, 383-84 (Nav.Sup.Ct.2011). Where a provision is part of such a larger scheme, the whole of that scheme necessarily figures in the interpretation of that provision. NHA v. Johns, 11 Am. Tribal Law at 38. The NPEA is necessarily part of the statutory scheme of NHA in its role as employer and must be read together with its Plan of Operations. The result may be complex. Our interpretation of our statutes must not negate the complexities found within our laws, but must attempt to reconcile and give force to their combined general intent. See, e.g., Nelson v. Shirley, 8 Am. Tribal Law 407, 417 (2010)(affirming that interpretation of a statute must not negate the complexities found within our Fundamental Laws as understood within the context of the Navajo Nation). It is clear that the NPEA applies fully in NHA’s employer-employee relationships and that NHA has the power at 6 N.N.C. § 616(B) to purchase insurance against NPEA-related risks and pursue various other options in order to make good on its preference-related promises.
The Commission is faced with complaints seeking relief (mainly back-pay, front-pay, reinstatement, injunctive relief, and attorney fees and costs) under 6 N.N.C. § 612(A). We reject NHA’s attempt to characterize claimants’ requested relief as “monetary claims” prohibited by 6 N.N.C. § 623, rather than permissible NPEA remedies and sanctions. We find the Commission has jurisdiction to hear NPEA complaints against the NHA and to address the remaining issues in the first instance. It also has authority to impose remedies and sanction pursuant to the NPEA. Enforcement of any remedial orders may be thereafter pursued in the courts of the Navajo Nation pursuant to 6 N.N.C. § 612(C).
Ill
Based on the foregoing, NHA’s petition for a wit of prohibition is DENIED. The eases are remanded to the Labor Commission for it to proceed to a hearing on the merits in each case.

. 6 N.N.C. § 623 provides:
Without exception, all property, including funds acquired or held by the Authority *418 pursuant to this subchapter, shall be exempt from levy and sale by virtue of any and all execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon such property. No exception to this section shall be recognized without a specific reference in any statute citing this provision and stating clearly that the exception is waived. However, the provisions of this section shall not apply to or limit the right of the obligee to pursue any remedies for the enforcement of any pledge or lien given by the Authority on its rents, fees or revenues or the right of the federal government to pursue any remedies conferred upon it pursuant to the provisions of this subchapter or the right of the Authority to bring eviction actions in accordance with § 616(B)(18) of this title.